PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

ANTHONY McQUEEN,
　　　　　*Defendant-Appellant.*

No. 04-5035

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellant,*

v.

ANTHONY McQUEEN,
　　　　　*Defendant-Appellee.*

No. 04-5129

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-04-257)

Argued: March 15, 2006

Decided: April 25, 2006

Before LUTTIG and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed in part and vacated in part by published opinion. Judge Luttig wrote the opinion, in which Judge Shedd and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** David Benjamin Smith, ENGLISH & SMITH, Alexandria, Virginia, for Appellant/Cross-Appellee. Patrick Friel Stokes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee/Cross-Appellant.

## OPINION

LUTTIG, Circuit Judge:

After a call from a reliable informant about a suspicious vehicle, police officers came upon Anthony McQueen's car in the parking lot of a bar in Woodbridge, Virginia. G.S.A. 6. Although the car was running, McQueen appeared to be asleep inside. *Id*. at 6, 21, 43. The car had a crushed rear bumper and out-of-state license plates. *Id*. at 6, 22-23. The officers knocked on McQueen's window, asked what he was doing and if he was okay, and asked to see his license and registration. *Id*. at 7. After a check of McQueen's papers came up with nothing, the officers returned to the car and asked McQueen to follow them to the rear of the vehicle. *Id*. at 9, 28-29, 54-55. They returned his license and registration and told him there was no violation of the law. *Id*. The officers then asked that McQueen consent to a search of his car. *Id*. at 9-10, 55. McQueen consented, *id*., and the officers found a handgun under the back seat, *id*. at 56.

McQueen was charged with being a felon in possession of a firearm. J.A. 15-17. The district court denied McQueen's motion to suppress the handgun, G.S.A. 65, and the jury convicted McQueen, J.A. 182. At sentencing, the district court declined to sentence McQueen as an armed career criminal. *See id*. at 141. McQueen was sentenced to 120 months imprisonment. *Id*. at 142. McQueen appeals on several grounds. The government appeals the district court's failure to sentence McQueen as an armed career criminal. We affirm McQueen's conviction but vacate his sentence.

I.

McQueen first assigns error to the district court's failure to suppress the handgun found under the back seat of his car, arguing that his consent to search the car was tainted by an unlawful *Terry* stop.

We do not believe that the initial stop was unlawful because there was sufficient evidence to give rise to a reasonable suspicion that illegal activity was afoot. A reliable informant phoned in a tip about a suspicious car in a bar parking lot. G.S.A. 6. From a distance, the officers observed an unconscious man in the driver's seat of the car. *Id.* They could also see that the rear bumper of the car was bashed in and that the car was running at idle. *Id.* at 6, 21. The car had out-of-state license plates, *id.* at 22-23, and was parked in an area known for drug and gang activity, *id.* at 14-15, 37. Under these circumstances, the officers, in light of their experience, could have reasonably suspected that McQueen, among other things, either had been or was about to drive drunk or that McQueen had hit a car and driven away. In light of these circumstances, the district court was correct to conclude that the officers had the reasonable suspicion necessary for the *Terry* stop. Therefore, McQueen's consent to search his car was effective and the district court did not err in refusing to suppress the handgun found during the search.

II.

McQueen argues that the district court also erred in instructing the jury on the "interstate nexus" element of his felon in possession offense. McQueen requested a detailed jury instruction on the "in or affecting interstate commerce" element of the felon in possession charge. The district court rejected McQueen's proposed instruction and instead instructed the jury that "[t]he government may meet its burden of proof on the question of being in or affecting commerce by proving beyond a reasonable doubt that the firearm identified in the indictment at any time had traveled across a state or country boundary line." J.A. 91.

Jury instructions are reviewed to determine "whether, taken as a whole, the instruction[s] fairly state[ ] the controlling law." *United States* v. *Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). McQueen argues

that the district court should have instructed the jury that movement of a firearm across a state line alone is not sufficient to satisfy the in-or-affecting-commerce element. According to McQueen's argument, movement across state lines is sufficient only if the firearm in question traveled "in interstate commerce," which McQueen distinguishes from traveling across state lines in his car. However, this court has held that "the Government may establish the requisite interstate commerce nexus by showing that a firearm was manufactured outside the state where the defendant possessed it" and that *United States* v. *Lopez*, 514 U.S. 549 (1995), *United States* v. *Morrison*, 529 U.S. 598 (2000), and *Jones* v. *United States*, 529 U.S. 848 (2000), did not alter this required showing. *United States* v. *Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001). We do not find the factual distinctions between McQueen's case and *Gallimore* of such significance as to require a different showing here. The district court's jury instruction, which tracks almost exactly the quoted language from *Gallimore*, was not an erroneous statement of controlling law.

## III.

The Presentence Report (PSR) assigned McQueen an offense level of 24 and a criminal history category of VI. J.A. 213, 228. The guideline range was set at 100 to 120 months. *Id*. at 217. Both McQueen and the government objected to the PSR. McQueen principally argued that his sentence should not be enhanced on the basis of a 1995 guilty plea. *Id*. at 94-96. The government argued that McQueen should be sentenced as an armed career criminal. *Id*. at 114-19. The district court overruled both objections and sentenced McQueen to 120 months imprisonment. *Id*. at 141-42. Both McQueen and the government have appealed the sentence, and we consider their arguments in turn.

## A.

McQueen argues that no criminal history points should have been added for his 1995 guilty plea to a charge of possession with intent to distribute heroin because the plea was the result of a violation of his right to counsel.

McQueen had originally retained private counsel for the proceeding that led up to the plea in question. *Id.* at 150. When that attorney ended his representation of McQueen, the court appointed counsel. *Id.* McQueen then fired his appointed lawyer and exercised his right to proceed *pro se*. When McQueen elected to proceed *pro se*, the magistrate judge conducted an "extensive hearing" to advise him of the dangers of proceeding *pro se*, and McQueen "assured" the judge that he was "fully capable" of representing himself. *Id.* at 151. A month later, on the day before trial, the district court asked McQueen if he was sure that he wanted to represent himself, and McQueen said that he "absolutely didn't want a lawyer." *Id.* at 152-53. On the morning of trial, the district court again asked McQueen if he wanted to represent himself, and McQueen said that he did. *Id.* at 149. However, when everyone entered the courtroom to begin jury selection, McQueen told the district court that he wanted a lawyer, claiming that he had diminished mental capacity resulting from the stress of pretrial incarceration. *Id.* at 150. The district court denied McQueen's request for counsel, believing that McQueen's request was made only to delay proceedings: "You can't jerk the court system around, young man." *Id.* at 154 ("To do that would require sending this jury back home with all the cost and expense involved of setting this case at some later date. I don't know when your mind is going to change again. You have had ample opportunity and I see no choice but to proceed."). McQueen ultimately reached a plea agreement with the help of a federal public defender.* McQueen argues that the district court denied his right to counsel, that the denial caused him to plead guilty, and, therefore, that the plea should not be considered in sentencing.

A defendant may collaterally challenge the use of a prior conviction in sentencing if that conviction was obtained in violation of his right to counsel. *See Custis* v. *United States*, 511 U.S. 485, 496 (1994). Here, it was not error for the district court to consider the 1995 plea in sentencing. First, McQueen was not denied his right to counsel. The right to counsel is limited by the interest in proceeding

---

*The public defender was not officially designated as McQueen's counsel. The district court had asked someone from the public defender's officer to sit at the table with McQueen during jury selection, and that public defender then acted as "messenger" in brokering the plea deal between McQueen and the prosecution.

with prosecutions on an orderly and expeditious basis. *Cf. Sampley* v. *Attorney Gen. of N.C.*, 786 F.2d 610, 613 (4th Cir. 1986) (holding such in the context of a defendant's ability to retain his own counsel). It is not a denial of the right to counsel to refuse to indulge the defendant's transparent attempts at manipulation by requesting an attorney on the day of trial. *United States* v. *West*, 877 F.2d 281, 286 (4th Cir. 1989) (holding that it was not error for the district court to deny a *pro se* defendant's request for counsel because of the "interest in proceeding on schedule") (quoting *United States* v. *Solina*, 733 F.2d 1208, 1211-12 (7th Cir. 1984) ("If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule.")). Second, it is not at all clear (or necessarily true) that McQueen agreed to the 1995 plea bargain *because* the district court would not appoint counsel. It could just as well have been that McQueen agreed to the plea because he was offered a good deal.

Because McQueen was not denied counsel for his 1995 guilty plea, the district court did not err in enhancing the sentence based on McQueen's plea to possession with intent to distribute heroin.

B.

The government argues that McQueen should have been sentenced as an armed career criminal. Had McQueen been sentenced as an armed career criminal, the minimum sentence would have exceeded the sentence imposed by sixty months. *See* 18 U.S.C. § 924(e)(1) (providing for a minimum sentence of fifteen years). The district court rejected the government's request to sentence McQueen as an armed career criminal without any analysis. *Id*. at 141 ("I find that the Government's additional request for an enhancement is not justified.").

A person who has three previous convictions for "violent felon-[ies]" or "serious drug offense[s]" is subject to a mandatory minimum sentence of 180 months. 18 U.S.C. § 924(e)(1). A "serious drug offense" is defined as a drug offense under federal or state law "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(i)-(ii). The term "violent felony" is defined to include "any crime punishable by imprisonment

for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B). However, for purposes of calculating the number of predicate offenses:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

McQueen has two serious drug offenses: an April 1993 conviction for possession with intent to deliver cocaine (10 year sentence) and the August 1995 plea to possession with intent to distribute heroin (16 year sentence). J.A. 201-02. The question here is whether any of McQueen's other state convictions is sufficient to classify McQueen as an armed career criminal under the statute and subject him to the fifteen year mandatory minimum sentence.

McQueen argues that none of his other state convictions can serve as a predicate offense because his civil rights, including his right to possess a firearm, had been restored for all of the potentially relevant state convictions. In this circuit, "a state conviction for a violent felony is not excluded from consideration under § 924(e) by the provisions of § 921(a)(20) until the law of the relevant state effectively restores to the defendant the right to possess firearms." *United States* v. *Clark*, 993 F.2d 402, 405 (4th Cir. 1993). And under *Clark*, we count as predicate offenses any violent felony convictions since the last date that a defendant was allowed to possess a firearm under state law.

Since the time that state law last allowed McQueen to possess a firearm, McQueen was convicted of a violent felony: common law robbery (in 1988). J.A. 197; *see also United States* v. *Presley*, 52 F.3d 64, 69 (4th Cir. 1995) (holding that common law robbery under Virginia state law was a violent felony for purposes of section 924(e)). Even if the prohibition on possession of a firearm that arose as a result of the common law robbery conviction had expired, McQueen was convicted of other felonies during the prohibition period, which

convictions have prevented the restoration of McQueen's right to possess a firearm through the current date. In other words, because of his repeated felony offenses over time, at no time since he committed the common law robbery has McQueen been permitted under state law to possess a firearm. Accordingly, McQueen is properly classified as an armed career criminal under section 924(e).

Because McQueen does, in fact, have the three required predicate offenses, it was error for the district court not to sentence McQueen as an armed career criminal. McQueen's sentence is, therefore, vacated and the case is remanded for resentencing.

## CONCLUSION

For the reasons stated herein, we affirm McQueen's conviction and vacate his sentence.

*AFFIRMED IN PART AND VACATED IN PART*