# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. NELSON KEITH FOSTER

**Appeal from the Circuit Court for Sullivan County**
**No. S53919      R. Jerry Beck, Judge**

_____

**No. E2011-00490-CCA-R3-CD - Filed May 17, 2012**

_____

Nelson Keith Foster ("the Defendant") was convicted by a jury of driving on a revoked or suspended license and driving on a revoked or suspended license, second offense. The trial court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days, suspended upon serving thirty days' incarceration. The Defendant appeals, asserting that: (1) the trial court erred in denying a motion to suppress the evidence obtained during an illegal traffic stop; (2) the evidence was insufficient to support his conviction; (3) the trial court erred in denying defense counsel's motions for withdrawal; and (4) the trial court erred in denying a motion to recuse. After a thorough review of the record, we affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Stephen M. Wallace, District Public Defender; Andrew J. Gibbons, Assistant Public Defender, Blountville, Tennessee, for the appellant, Nelson Keith Foster.

Robert E. Cooper, Jr., Attorney General & Reporter; Nicholas W. Spangler, Assistant Attorney General; Barry P. Staubus, District Attorney General; Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Background Facts & Procedure

On May 29, 2007, an officer with the Kingsport Police Department stopped the Defendant after witnessing an alleged traffic violation. During the stop, the police officer discovered that the Defendant's driver's license was on revoked status. Subsequently, the Defendant was charged with: (1) unlawfully stopping, standing, or parking a vehicle in a prohibited public place, Tenn. Code Ann. § 55-8-160, a Class C misdemeanor; (2) driving on a revoked or suspended license, Tenn. Code. Ann. § 55-50-504(a)(1), a Class B misdemeanor; and (3) driving on a revoked or suspended license, second offense, Tenn. Code Ann. § 55-50-504(a)(2), a Class A misdemeanor. The Defendant filed a motion to suppress, arguing that he had not violated traffic laws and that the police officer, therefore, lacked probable cause to initiate the traffic stop. Additionally, the Defendant filed a motion to dismiss based upon the allegedly illegal traffic stop. In his motion to dismiss, the Defendant also argued that the State could not prove that his driver's license was validly revoked because of deficiencies in the State's records.

The trial court held a suppression hearing on October 15, 2008. Officer Thomas Wayt, Jr., of the Kingsport Police Department, testified that on May 29, 2007, he was dispatched to the Riverview area of Kingsport to be on the lookout for suspicious activity in the neighborhood of the "Splash Pad," a recreational area developed by the city of Kingsport. Officer Wayt was driving an unmarked car, and he testified that after driving around the Splash Pad, he parked down the street in a surveillance position. From there, Officer Wayt observed a van on Wheatley Street "parked in the middle of the roadway, not in a parking space." Officer Wayt stated that there were vehicles legally parked along the curb and that the van was parked beside those cars "in the travel lane of the roadway." Officer Wayt saw several individuals approach the van, speak to the driver for a few minutes, and then return to the park. He did not know what occurred between the individuals and the driver of the van, but he was suspicious of hand-to-hand or casual exchange of narcotics. On cross-examination, Officer Wayt stated that the individuals spoke to the driver of the van for "less than a minute."

In Officer Wayt's view, by stopping a vehicle in the middle of the roadway, the driver of the van was violating both a state statute, Tennessee Code Annotated section 55-8-160(a)(12), as well as a city ordinance, Kingsport Municipal Ordinance Article IV, Section 102-262.[1]

---

[1] Both the state statute and city ordinance prohibit stopping, standing, or parking a vehicle in certain
(continued...)

Officer Wayt stopped the van and told the driver, whom he identified as the Defendant, that he pulled him over for stopping in the roadway. Officer Wayt requested the Defendant's driver's license. The Defendant replied that he did not have his license with him, but he could provide his driver's license number. The Defendant produced an identification card, and when Officer Wayt checked the card through central dispatch, it returned as "not on file." Officer Wayt then obtained personal information from the Defendant which he ran through central dispatch. Dispatch advised Officer Wayt that the Defendant's driver's license was currently suspended or revoked. Officer Wayt subsequently arrested the Defendant.

On cross-examination Officer Wayt acknowledged that he did not attempt to stop the Defendant's vehicle while the alleged traffic violation was occurring. He explained that by the time he initiated the traffic stop, the Defendant had pulled away. Officer Wayt acknowledged that there was no other traffic on the street at the time of the alleged offense. He replied, however, that the Defendant's van was "blocking the entire roadway" and "traffic would have been impeded." Officer Wayt clarified that, although his attention was initially

---

[1](...continued)
places. The state statute provides that:

> (a) No person shall stop, stand or park a vehicle outside of the limits of an incorporated municipality, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, in any of the following places:
> . . . .
> (12) On the roadway side of any vehicle stopped or parked at the edge or curb of a street.

Tenn. Code Ann. § 55-8-160(a)(12)(2004).

> Similarly, the city ordinance provides that:

> (a) No person shall:

> (1) Stop, stand or park a vehicle:

> a. On the roadway side of a vehicle stopped or parked at the edge or curb of a street.
> . . . .
> d. Whenever parking is prohibited as authorized in this chapter, it shall be the duty of the department of planning and engineering to erect appropriate signs giving notice thereof, and no such regulations shall be effective unless a minimum of two such signs are erected in each block and in place at the time of any alleged offense.

Kingsport Municipal Ordinance Article IV, Section 102-262(a)(1)(a), (d).

drawn to the van because of the people who approached it, the reason he initiated the stop was because the van was stopped in the roadway in violation of a city ordinance and state statute. Officer Wayt conceded that he cited the Defendant only for violation of the state statute and did not issue a citation pursuant to the city ordinance. Officer Wayt explained that it was his department's policy to only cite for the state violation when someone violated both a city ordinance and a state statute.

The Defendant argued at the suppression hearing that the state statute, Tennessee Code Annotated section 55-8-160, was inapplicable because it applied only to violations occurring outside of an incorporated municipality. He also argued that the city ordinance, Kingsport Municipal Ordinance Article IV, Section 102-262, was inapplicable because the city had not posted signs prohibiting parking as the Defendant claimed the ordinance required. Thus, the Defendant argued that Officer Wayt lacked probable cause to initiate the stop based upon a traffic violation and that any evidence obtained during the traffic stop should be suppressed.

After hearing the testimony and arguments of counsel, the trial court denied the motion to suppress. The trial court reasoned that Officer Wayt's stop of the Defendant's vehicle was reasonable based upon a violation of the city ordinance. The trial court determined that the lack of parking signs did not affect the reasonableness of the stop because the city ordinance only required signs where parking was prohibited and did not require signs prohibiting a person from stopping a vehicle in the middle of the road. Thus, the trial court allowed the evidence obtained in the stop to be used against the Defendant.

The trial court held a number of continued hearings on the Defendant's motion to dismiss based upon the validity of his certified driving record. The trial court ultimately denied the motion to dismiss on this ground but ordered the State to file a bill of particulars. The Defendant filed a motion to reconsider, and on April 1, 2010, the trial court heard testimony on the motion to reconsider from Meelora Zerick, a safety examiner and keeper of records for the Tennessee Department of Safety ("TDOS"). Zerick testified that the Defendant's driver's license was validly suspended as of the date of the alleged offense, May 29, 2007. She explained that the Defendant's driving record showed that his driver's license was suspended for frequent traffic violations on June 18, 1982. She also relayed that the Defendant received a "failure to satisfy" citation on August 18, 1986, which resulted in a mandatory suspension, and his license was again suspended on December 20, 1993, after he failed to complete a defensive driving course within ninety days. Zerick explained that the suspensions were unrelated to each other, and that if one of the suspensions was removed from the Defendant's driving record, the other suspensions would remain in place. After hearing this testimony, the trial court denied the motion to reconsider, and the matter proceeded to trial.

At a jury trial held on July 28, 2010, Officer Wayt provided a similar account of the events surrounding the traffic stop. In addition, Officer Wayt testified that after arresting the Defendant, he obtained a certified copy of the Defendant's driving record from TDOS and that it showed the Defendant's license to be revoked as of May 29, 2007. The State introduced two versions of the Defendant's certified driving record, one dated June 6, 2007, shortly after the alleged offense, and one dated October 5, 2009. Zerick testified that both versions indicated that the Defendant's driver's license was on revoked status as of May 29, 2007. Additionally, both versions contain multiple entries reflecting various suspensions and the ultimate revocation of the Defendant's driver's license.

During cross-examination of Zerick, the Defendant attacked the validity of the certified driving records offered by the State. Zerick testified generally that a person's certified driving record represents a compilation of other supporting documents. She acknowledged that these supporting documents were kept on microfilm and not reproduced in the certified driving record that had been introduced as an exhibit. She said that a change in the supporting documents, such as a removal or reinstatement of driving privileges, is usually reflected in the driving record by a code.

Zerick acknowledged that in this case TDOS removed a prior suspension from the Defendant's driving record because the underlying citation had been satisfied. Specifically, the June 6, 2007 version of the Defendant's driving record contained a 1985 suspension for failure to satisfy a citation. Zerick conceded that the State suspended the Defendant's license on July 4, 1985, even though the Defendant had satisfied the citation on January 23, 1985. Zerick explained that because the Defendant had satisfied the ticket and the underlying charges were dismissed, TDOS removed the suspension from his driving record, albeit in January, 2007. The October 5, 2009 version of the Defendant's driving record did not reflect the 1985 suspension, however, it also did not contain a removal code indicating that the entry had been removed from the driving record. Zerick explained that sometimes a correction will not be reflected on the official driving record because of the age of the violation.

At the close of the State's proof, the Defendant moved for a judgment of acquittal as to the charge of unlawfully stopping, standing, or parking a vehicle in a prohibited public place. The trial court granted the motion after finding the State failed to prove the offense occurred "outside of an incorporated municipality" as the State's proof showed the offense occurred inside Kingsport city limits. The Defendant then moved for judgment of acquittal as to the remaining two counts, reasserting his argument from the suppression hearing that any evidence that the Defendant was driving on a revoked license should be excluded because the Defendant had not violated a traffic law at the time he was stopped. The trial court denied the motion, and the Defendant then presented his case.

The Defendant's proof consisted of his own testimony. He testified that on the day of his arrest, he was driving near the Splash Pad when his daughter and granddaughter saw his van and ran to greet him. He said that he stopped to greet them for less than thirty seconds. When he saw a police car pull in behind him, he drove away. The Defendant testified that there were no other cars on the roadway other than Officer Wayt and himself. He stated that he did not pull away because he was doing something illegal but simply because he "was blocking the road." When Officer Wayt stopped him, the officer asked whether he had guns or drugs in the van. The Defendant replied that he did not.

Regarding his driving record, the Defendant testified that he had "never been convicted of any traffic offense that required the suspension of my license." He explained that the charges that were originally used to suspend his license were later dismissed. He testified that he never received any paperwork indicating that his license was revoked. The Defendant felt as though he had been "caught in the system." He admitted on cross-examination that he had received speeding tickets and not paid them.

After deliberations, the jury convicted the Defendant of driving on a revoked license, a Class B misdemeanor. Tenn. Code Ann. § 55-50-504(a)(1). In a bifurcated trial, the State put forth proof of the Defendant's prior conviction for violating section 55-50-504(a)(1), and the jury convicted him of driving on a revoked or suspended license, second offense. Tenn. Code Ann. § 55-50-504(a)(2) (making a subsequent violation of section 55-50-504(a)(1) a Class A misdemeanor). The trial court merged the convictions and sentenced the Defendant to eleven months and twenty-nine days, with a suspended sentence after thirty-days' incarceration.

<u>Issues Presented</u>

The Defendant has presented the following issues for appellate review:

1. Whether the trial court erred by denying the Defendant's motion to suppress based upon the illegality of the traffic stop conducted by the arresting officer?[2]

---

[2]In his brief the Defendant asserts that the trial court erred both in denying his motion to suppress as well denying his motion to dismiss based upon the illegality of the traffic stop. His argument is essentially that if the traffic stop was illegal then the evidence against him should be suppressed and the charges dismissed. Thus, his argument on the motion to dismiss relies on the trial court granting the motion to suppress. On appeal, the Defendant has not made a separate argument regarding the motion to dismiss. Consequently, we need only address the merits of the motion to dismiss if we determine that the trial court should have granted the motion to suppress.

2. Whether the trial court erred by not requiring the State to prove the validity of the Defendant's driver's license suspension?[3]

3. Whether the trial court erred by denying defense counsel's motions to withdraw as counsel?

4. Whether the trial court erred by denying the Defendant's motion to recuse?

## Analysis

### *Motion to Suppress*

On appeal, the Defendant first contends that the trial court erred by denying his motion to suppress the evidence obtained as a result of the traffic stop. The Defendant argues that Officer Wayt's stop was based upon a mistaken understanding and interpretation of the law and that the officer, therefore, lacked probable cause to initiate the stop. The State asserts that the stop was lawful because Officer Wayt had reasonable suspicion that the Defendant committed a traffic violation.

In our review, we may consider the evidence adduced at the suppression hearing as well as evidence adduced at trial in determining whether the trial court properly denied a motion to suppress. State v. Henning, 975 S.W.2d 290, 297-99 (Tenn. 1998). Questions regarding the witnesses' credibility, "the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, we will uphold the trial court's factual findings unless the preponderance of the evidence is otherwise. Id. However, where the trial court has applied the law to the facts, we will conduct a *de novo* review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Because the State is the prevailing party, it is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

---

[3] The charging instrument in this case charged the Defendant with driving on a "cancelled, suspended, or revoked" license. During the trial, the trial court instructed the jury that the State was pursuing a conviction only upon a driving on a revoked license charge. Thus, while the Defendant phrases his issue in terms of a suspension, we discern the substance of his argument to be that the State did not prove his license was validly revoked at the time of the offense.

Both the Fourth Amendment to the United States Constitution, as well as article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. State v. Ingram, 331 S.W.3d 746, 754 (Tenn. 2011) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).[4] Under both constitutions, "a warrantless search or seizure is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)); see also State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003). One of these exceptions is that police officers may stop an automobile if they have probable cause or an articulable and reasonable suspicion to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996); State v. Vineyard, 958 S.W.2d 730, 734-35 (Tenn. 1997); State v. Watson, 354 S.W.3d 324, 329 (Tenn. Crim. App. 2011). If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. See Whren, 517 U.S. at 813-15; Vineyard, 958 S.W.2d at 734-35. Reasonable suspicion exists when "'specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Brotherton, 323 S.W.3d 866, 870 (Tenn. 2010) (quoting Terry v. Ohio, 392 U.S. 1, 20-21 (1968)); State v. Day, 263 S.W.3d 891, 902-903 (Tenn. 2008). Whether reasonable suspicion exists is based upon an objective standard, and courts must look to the totality of the circumstances. See Terry, 392 U.S. at 21-22; Brotherton, 323 S.W.3d at 870 (citing State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000); State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001)).

In this case, the Defendant was clearly seized when Officer Wayt stopped his vehicle. See Ingram, 331 S.W.2d at 756; Day, 263 S.W.3d at 901-902. Consequently, we must determine whether Officer Wayt had probable cause or an articulable and reasonable suspicion that a traffic violation had occurred at the time he initiated the stop. See Vineyard, 958 S.W.2d at 734 (Tenn. 1997); see also Whren, 517 U.S. at 810.

At the suppression hearing, Officer Wayt testified that he stopped the Defendant's van after he saw it stopped in the middle of the roadway. Officer Wayt testified that the Defendant's infraction violated both state and city traffic laws; however, he only cited the

_____

[4]The Fourth Amendment is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Mapp, 367 U.S. at 655; Ingram, 331 S.W.3d at 754. The intent and purpose of article I, section 7 of the Tennessee Constitution is identical with the Fourth Amendment; however, our Supreme Court has noted previously that Tennessee's search and seizure case law has developed independently from, and extends greater protection than, federal law. See State v. Richards, 286 S.W.3d 873, 877-78 (Tenn. 2009).

Defendant under the state statute.[5] Officer Wayt explained that it was the Kingsport Police Department's policy when a traffic offender violated both state law and city ordinance to issue a citation only for the violation of state law. The Defendant argues that he did not violate either city or state traffic laws and that Officer Wayt thus based his stop upon a mistaken interpretation of the law.

The State concedes that the trial court correctly granted a motion for judgment of acquittal on the state traffic charge because the offense occurred inside the city limits of Kingsport, in contravention of the statute's express language. See Tenn. Code Ann. § 55-8-160(a). The State argues, however, that the Defendant nevertheless violated Kingsport Municipal Ordinance Article IV, Section 102-262 and that the stop was supported by the officer witnessing the violation. The Defendant counters that the city failed to post the requisite signs prohibiting parking. In the Defendant's view, the city's failure to post signs makes the ordinance inapplicable, thus, Officer Wayt could not have had probable cause or reasonable suspicion to initiate the stop. We are unpersuaded by the Defendant's argument.

First, as the Tennessee Supreme Court has explained, "[a] showing of reasonable suspicion does not require an actual violation of the law because 'Terry accepts the risk that officers may stop innocent people' to investigate further." Brotherton, 323 S.W.3d at 871 (quoting Illinois v. Wardlow, 528 U.S. 119, 126 (2000)). Rather, the test is whether the police officer had probable cause or reasonable suspicion that a traffic violation occurred and not whether the defendant would be found guilty in a court of law for the infraction. Id. (citing United States v. Johnson, 242 F.3d 707, 709-10 (6th Cir. 2001); United States v. Fowler, 402 F. Supp. 2d 1338, 1340-41 (D. Utah 2005)). Thus, it is possible for a seizure to be legal even when the charge that forms the basis for the seizure is later dismissed.

Moreover, we agree with the trial court that Officer Wayt had reasonable suspicion that the Defendant was violating Article IV, Section 102-262 and that the ordinance did not require the city to post signs prohibiting parking in the middle of the roadway. Officer Wayt testified that vehicles were legally parked on the curb of Wheatley and that the Defendant stopped his vehicle on the roadway side of these vehicles. Consequently, Officer Wayt's testimony that he saw the Defendant parked in the middle of the roadway, a fact which the

---

[5]Officer Wayt also believed that he witnessed "what could have been" a casual exchange of narcotics between the driver of the van and the individuals who approached the van. Officer Wayt's possible subjective motivation is corroborated by the Defendant's testimony that Officer Wayt asked him whether he had drugs inside the van. However, because neither side explored this reason for the stop at the suppression hearing or at trial, and the trial court did not address it in its ruling, we do not determine on appeal whether Officer Wayt had reasonable suspicion to stop the vehicle based upon suspected drug activity. Rather, we will limit our discussion to the trial court's ruling that the stop was justified based upon Officer Wayt's witnessing a traffic violation.

Defendant does not contest, establishes that Officer Wayt clearly had at least reasonable suspicion that the Defendant was violating a city traffic ordinance. Therefore, the trial court properly denied the motion to suppress.

*Sufficiency of Evidence*

The Defendant next argues that the trial court erred by not requiring the State to prove the validity of the Defendant's driver's license revocation. See *supra* note 3. Because the State must prove that the Defendant's driver's license was legally revoked at the time of the alleged offense to support a conviction under Tennessee Code Annotated section 55-50-504, we interpret the Defendant's issue as one challenging the sufficiency of the evidence.

In reviewing the sufficiency of the evidence supporting a conviction, our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992) (citations omitted). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted).

"A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained which is open to the use of the public for purposes of vehicular travel at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor." Tenn. Code Ann. § 55-50-504(a)(1) (2004). "A second or subsequent violation of subdivision (a)(1) is a Class A misdemeanor." Tenn. Code Ann. § 55-50-504(a)(2). The proof must establish that the defendant's driver's license was legally revoked prior to the time of the alleged offense. State v. Loden, 920 S.W.2d 261, 264 (Tenn. Crim. App. 1995). The State may introduce a certified copy of the defendant's driving record as maintained by the Tennessee Department of Safety to establish the defendant's driver's license status at the time of the alleged offense. State v. Donnie Ray Sisk, No. 01C01-9803-CC-00143, 1999 WL 298221 (Tenn. Crim. App. May 12, 1999). Such a document is admissible as substantive evidence under the public records exception to hearsay. Id.; Tenn. R. Evid. 803(8).

Taken in the light most favorable to the State, the evidence shows that on May 29, 2007, Officer Wayt was conducting surveillance at the Splash Pad in Kingsport when he saw the Defendant's van parked in the middle of Wheatley Street. As Officer Wayt approached the van, the Defendant drove away. When the officer stopped him, the Defendant was unable to produce a valid driver's license. After checking the Defendant's personal identification with central dispatch, Officer Wayt was informed that the Defendant's driver's license was on suspended or revoked status. At that point, the officer arrested the Defendant. Officer Wayt later obtained the Defendant's certified driving record, which was admitted into evidence. Meelora Zerick, a safety examiner and keeper of records for TDOS, testified that the Defendant's driving license was on revoked status as of May 29, 2007. To establish that this was the Defendant's second offense, the State introduced the Defendant's conviction for driving on a suspended license in the Circuit Court of Sullivan County on October 19, 1994.

The Defendant testified that the charge for which his driver's license was initially suspended had been dismissed but that his record had not been corrected to reflect the dismissed charge. The Defendant asserted that each subsequent suspension or revocation on his driving record referenced or was based upon the erroneous suspension. Zerick's testimony confirmed that the Defendant's license had been suspended for a charge that was later dismissed; however, she indicated that the dismissal of the suspension had been corrected in 2007 and reflected on the Defendant's latest certified driving record. The Defendant's driving record showed multiple other suspensions and a revocation in the years since his erroneous suspension.

We hold that the evidence was sufficient to support the Defendant's conviction for driving on a revoked license, second offense. To the extent that the Defendant challenged the validity of his certified driving record, this presented a question of fact for the jury to resolve. When the evidence is sufficient to support the jury's verdict, we will not overturn the verdict on appeal. The Defendant is not entitled to relief on this issue.

*Motion to Withdraw as Counsel*

The Defendant argues that the trial court erred in denying his appointed counsel's ("defense counsel") motions to withdraw as counsel. We are unpersuaded.

Defense counsel moved to withdraw as counsel three separate times, each time at the apparent urging of the Defendant. The first motion was filed on October 21, 2008, pursuant to Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.16(b)(5)-(6).[6] In the

---

[6] The Rules of Professional Conduct provide, in relevant part, that:

(continued...)

-11-

motion, defense counsel asserted that, following the unsuccessful motion to suppress hearing, the Defendant became dissatisfied with defense counsel and insisted that defense counsel withdraw. Defense counsel asserted that the Defendant's "conduct, attitude, and allegations against counsel has resulted in the dissolution of the bond of trust and confidence that is necessary for representation . . . ." At a hearing on November 24, 2008, the Defendant testified that he did not believe defense counsel was adequately representing him and that defense counsel had not presented his case in the manner the Defendant had instructed him. Defense counsel relayed that the Defendant told him that he distrusted members of the public defender's office. Defense counsel told the court that he and the Defendant "at times [have] been unable to communicate without it deteriorating into a shouting match." Defense counsel was skeptical whether he could convince the Defendant "to trust in . . . my abilities." However, when asked by the trial court if the attorney-client relationship was irrevocably breached, defense counsel replied that it had not been and advised that he believed the relationship could be rehabilitated. After hearing defense counsel's assertion that the relationship had not been forever breached, the trial court denied the motion.

Defense counsel filed a second motion to withdraw on June 23, 2010, which was heard by the court on June 30, 2010. Defense counsel asserted that attempts to rehabilitate his relationship with the Defendant had not been successful. Additionally, defense counsel asserted that the Defendant instructed him to take actions that he believed to be imprudent in contravention of Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.16(b)(3)[7]. Specifically, defense counsel stated that the Defendant instructed him to raise

---

[6](...continued)
(b) Except as stated in paragraph (c), a lawyer may withdraw from the representation of a client if the withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
. . . .
(5) The representation will result in an unanticipated and substantial financial burden on the lawyer or has been rendered unreasonably difficult by the client;

(6) Other good cause for withdrawal exists.

. . . .
(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Tenn. Sup. Ct. R. 8, RPC 1.16(b)(5)-(6); (c).

[7]That rule provides that a lawyer may withdraw as counsel, except as ordered by a tribunal, when "[a] client insists upon pursuing an objective or taking action that the lawyer considers repugnant or imprudent." Tenn. Sup. Ct. R. 8 RPC 1.16(b)(3).

arguments and objections to matters upon which the trial court had already ruled. Defense counsel stated that he and the Defendant could not talk to one another without shouting and that the last time they spoke, the Defendant hung up the telephone. The Defendant testified that he wanted defense counsel to appeal the trial court's evidentiary rulings and, in his view, defense counsel had not presented the proper arguments to the trial court. The trial court denied the motion, citing the length of time the proceedings had been pending, the nature of the case, judicial economy, and the fact that defense counsel had properly preserved the Defendant's complaints for appeal.

On the day of trial, defense counsel orally made a third motion for withdrawal. Defense counsel stated that the reasons supporting the motion were the same as in his prior motions. The Defendant told the court that he filed a civil rights complaint against defense counsel with the Department of Justice. The Defendant vaguely complained to the court about defense counsel's performance as his attorney. The Defendant declined the trial court's invitation to represent himself. Finding that the Defendant's issues with defense counsel related to issues that had been properly preserved for appeal, and citing the length of time the case had been pending, the trial court denied the motion to withdraw. Defense counsel represented the Defendant during the trial and on appeal.

Criminal defendants are guaranteed the right to counsel at trial by both our federal and state constitutions. U.S. Const. Amend. VI; Tenn. Const. art. I, § 9; see Gideon v. Wainwright, 372 U.S. 335, 342-44 (1963); Poindexter v. State, 191 S.W.2d 445, 445 (Tenn. 1946). This right is deemed so important that its wrongful deprivation results in a structural error requiring reversal. See Chapman v. California, 386 U.S. 18, 23 n.8 (1967); State v. Holmes, 302 S.W.3d 831, 838 (Tenn. 2010). The right to counsel is not without its limits, however. Holmes, 302 S.W.3d at 838. "The right to counsel is limited by the interest in proceeding with prosecutions on an orderly and expeditious basis." United States v. McQueen, 445 F.3d 757, 760 (4th Cir. 2006).

Moreover, the right to counsel "does not include the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel." State v. Carruthers, 35 S.W.3d 516, 546 (Tenn. 2000); see also Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989) (recognizing that the Sixth Amendment right to counsel does not guarantee that an indigent criminal defendant will be represented by the lawyer of his or her choice). As pointed out by the United States Court of Appeals for the Sixth Circuit, "[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." United States v. Iles, 906 F.2d 1122, 1130 (6th Cir. 1990). Rather, "[t]he essential aim of the Sixth Amendment is to guarantee an effective advocate, not counsel preferred by the defendant." Carruthers, 35 S.W.3d at 546 (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).

With respect to motions to withdraw, a trial court, upon good cause shown, may permit the withdrawal of an attorney appointed to represent an indigent defendant. Tenn. Code Ann. § 40-14-205(a) (2006). This Court previously has stated that:

> When an accused seeks to substitute counsel, the accused has the burden of establishing to the satisfaction of the trial judge that (a) the representation being furnished by counsel is ineffective, inadequate, and falls below the range of competency expected of defense counsel in criminal prosecutions, (b) the accused and appointed counsel have become embroiled in an irreconcilable conflict, or (c) there has been a complete breakdown in communications between them.

State v. Gilmore, 823 S.W.2d 566, 568-69 (Tenn. Crim. App. 1991). We review matters regarding the appointment and relief of counsel under an abuse of discretion standard and will not set aside a trial court's decision on these matters absent a plain abuse of that discretion. State v. Branam, 855 S.W.2d 563, 566 (Tenn. 1993).

After a careful review of the record, we conclude that the trial court did not abuse its discretion in denying defense counsel's motions to withdraw. The Defendant failed to establish that defense counsel's representation was ineffective, inadequate, and fell below the range of competency expected of counsel in criminal prosecutions. To the contrary, the record demonstrates that defense counsel filed and zealously litigated several pretrial motions over the course of two-and-a-half years in this misdemeanor case. During the jury trial, defense counsel successfully obtained a motion of judgment of acquittal on one charge and properly preserved the Defendant's other issues for appeal.

Moreover, the Defendant failed to establish that he and defense counsel were embroiled in an irreconcilable conflict or that a complete breakdown in communications existed. We have no doubt that the Defendant was a difficult client and that communications between defense counsel and the Defendant were sometimes strained. However, the record reflects that defense counsel acted on the instructions of the Defendant where appropriate. During the hearing on the first motion to withdraw, defense counsel stated that he only filed the motion because the Defendant insisted that he do so. Likewise, in various pretrial hearings, as well as at trial, defense counsel clearly developed lines of inquiry and argument at the behest of his client. Moreover, during the hearings on each motion to withdraw, the Defendant never complained about a breakdown in communication with defense counsel. Rather, the Defendant's complaints involved the trial court's adverse rulings on pretrial motions and the Defendant's belief that those adverse rulings were the result of defense counsel's ineffectiveness.

The trial court determined that these complaints did not establish good cause to permit defense counsel to withdraw. We agree with the trial court and conclude that the Defendant is not entitled to relief on this issue.

*Motion to Recuse*

Lastly, the Defendant asserts that the trial court erred when it denied his motion to recuse. Specifically, the Defendant argues that the trial court violated Tennessee Supreme Court Rule 10, Canon 3(E)(1), which requires a trial judge to recuse himself or herself in a proceeding "in which the judge's impartiality might reasonably be questioned." The Defendant alleged that he had previously appeared before the trial judge in previous cases and that the trial judge had refused to rule on certain petitions, motions, and issues presented by the Defendant. The Defendant did not detail which particular matters the trial court refused to rule upon.

The Tennessee Constitution provides that "[n]o judge . . . shall preside on the trial of any cause in the event of which he may be interested." Tenn. Const. art. VI, § 11. As the Tennessee Supreme Court has stated, "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." State v. Odom, 336 S.W.3d 541, 575 (Tenn. 2011) (quoting Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 548 (Tenn. 2004)). The test for determining whether recusal is necessary is an objective one, and under this test, recusal becomes necessary "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Odom, 336 S.W.3d at 575 (citations omitted). However, "'the mere fact that a judge has ruled adversely to a party . . . is not grounds for recusal' because '[i]f the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties . . . in every case.'" Id. at 577 (quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 565 (Tenn. 2001)). We will review a trial court's recusal decision under an abuse of discretion standard. State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006).

In this case, we conclude that the trial judge did not abuse his discretion in declining to recuse himself from the Defendant's criminal trial. While the Defendant makes general claims that the trial judge was biased against him, his only specific complaints were that the trial judge had previously ruled against him and had denied his motions in the present case. The fact that a trial judge has previously presided over legal proceedings involving the same defendant does not establish bias. Reid, 213 S.W.3d at 815 (citation omitted). Moreover, even "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." Alley v. State, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) (also stating that "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify

disqualification." Id.). The Defendant's allegations simply do not show bias and, thus, do not require recusal. The Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the criminal court is affirmed.


_____
JEFFREY S. BIVINS, JUDGE